IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

**August 6, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| WANDA C. TATE, | ) | KNOX CIRCUIT |
| | ) | C.A. NO. 03A01-9710-CV-00459 |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | |
| SALLY SEIVERS and CAROLE | ) | |
| MITCHELL, | ) | HON. WHEELER A. ROSENBALM |
| | ) | JUDGE |
| Defendant-Appellant | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| L'ARGENT, INC., | ) | |
| | ) | |
| Intervening Plaintiff- | ) | |
| Appellant | ) | |
| | ) | |
| vs. | ) | |
| | ) | AFFIRMED AND REMANDED |
| | ) | |
| WANDA C. TATE | ) | |

BARRY K. MAXWELL, MARY JANE BORDEN, Egerton, McAfee, Armistead &
Davis, P.C., for Appellants.


LINDA J. HAMILTON MOWLES, Lewis, King, Krieg, Waldrop & Catron,
P.C., for Appellee.

O P I N I O N

McMurray, J.

This is an action on a promissory note. In 1993, plaintiff, Wanda Tate, sold her women's clothing store to the defendants, Sally Seivers and Carole Mitchell and their corporation, L'Argent, Inc. (collectively "buyers"). Several months after the sale, the buyers, dissatisfied with some of the inventory sold to them, tendered less than the full payment amount called for by the promissory note they had signed in partial consideration for the sale. Tate rejected the partial payment and sued for recovery of the full amount due under the terms of the note. The buyers argued that Tate had made material misrepresentations regarding some of the inventory, resulting in the value of the inventory they purchased being substantially less than anticipated at the time of sale.

The trial court found that Tate was not guilty of misrepresentation or fraud, and awarded her the full amount due under the note, plus interest and attorney's fees. The buyers appeal, raising the issue of whether the preponderance of the evidence establishes that Tate made material misrepresentations to the buyers of her business, upon which the buyers reasonably relied to their detriment. We affirm the trial court's judgment.

Tate opened her retail women's clothing store, called L'Argent, in December of 1989. In December of 1992, the buyers entered the store and inquired whether Tate would be interested in selling the store. Tate responded in the affirmative and the parties met in January of 1993 to discuss the possibility of a sale. Over the next two months, the parties engaged in rather extensive negotiations over the terms of the sale.

The parties' testimony regarding what was said, done and finally agreed upon over the course of negotiations is sharply disputed. The primary point of contention is exactly what inventory was to be included in the sale and the sale price. The buyers had gone to market in the fall of 1992 and had already purchased clothing to sell for the spring. They did not want to buy any of Tate's "old" merchandise and were interested only in the clothing she had recently purchased for the upcoming spring season.

Tate testified that she consistently refused to sell the business unless the buyers agreed to purchase all of her inventory, except the clothing items that were on her sale racks. Buyer Mitchell testified that the buyers constantly stressed to Tate that they wanted only her spring merchandise. She stated that it was the buyers' understanding that they would not be sold any clothing that had been subject to invoice to Tate prior to January of 1993.

3

Mitchell testified that as a compromise, they agreed to buy accessory items, such as jewelry, purchased before 1993. Tate testified that the buyers knew they were buying inventory, including shoes and clothing, purchased by her prior to 1993.

Tate testified that prior to closing, she sold all of the items on her sale racks to a jobber for a significant loss. Tate also stated that she changed the price of several accessory items which were in a sale bin back to full price before closing, and explained that this was irrelevant from the buyers' perspective since they had agreed to buy all the accessories anyway, and were buying them at wholesale cost.

Tate testified that the buyers were in the store numerous times before closing, that she showed them the inventory items they would be buying, and that they could have taken a physical inventory before closing if they had so desired. Mitchell testified that Tate would not allow them to take inventory during business hours and would not give them access to the business computer files. The tags on the clothing were coded, using a system which provided information including what year Tate purchased the item. Tate testified she explained the coding system to the buyers before closing. On the other hand, Mitchell testified that she did not explain the system.

4

On February 8, 1993, Tate provided the buyers' attorney with a computer printout of the store's inventory then on hand. The printout consisted of several pages of lists of items, their cost, the amount sold, and the balance on hand. On two of the pages, the lists are headed by a notation stating "FALL 1990." One page bears the notation "SPRING 1991" at the top of the inventory list. The parties agreed that since the store's inventory would be in a state of constant fluctuation, Tate would provide a similar printout of the inventory as of the close of business February 27, 1993, the last business day before closing.

The closing of the sale took place on March 1, 1993. Tate testified that she provided the buyers with a final inventory printout at closing. Mitchell testified that she could not remember if the final inventory list was given to them at closing. On the final inventory list, two pages bear the heading "SEASON: FALL 1990." One page is headed "SEASON: SPRING 1991," and another page is headed "SEASON:1990." Another page bears the heading "SEASON: NEW INVENTORY AS OF SEPT. 6, 1992."

Mitchell testified that the buyers were not given access to the store, the business computer, or the store's invoices prior to closing. Tate's testimony directly contradicts these assertions. Mitchell testified that some of the invoices were missing after the closing, and Tate testified that she left all of the invoices at

5

the store.  It is undisputed that Mitchell came into the store on the weekend prior to the closing, and noticed some evening wear hanging in Tate's office.  Mitchell told Tate that they did not want to purchase the evening wear, and Tate acceded, agreeing to take $7,000 off the purchase price.  Although the final price reflected the agreed deduction, Tate left the evening wear in the store after closing.

Melanie Moore, an employee of the store before and after the sale, testified that shortly after the buyers took over, she and Mitchell conversed about the coding system on the clothing tags and the information it provided.  Moore testified that Mitchell "became visibly upset" when she discovered that inventory which Tate had purchased prior to January 1993 had been included in the purchase price.

The final purchase price at closing was $101,154.85, reflecting a price of $15,900 for the fixtures and equipment, and the remainder for the store's inventory.  The buyers paid half the purchase price at closing and signed a promissory note for the remaining $50,577.42.  The note provided for an interest rate of 7.5% per annum and two payments of one-half of the principal balance.  The note, which was drafted by the buyers' attorney, provides that "[t]he makers agree to pay all costs, including reasonable attorney's fees, whether suit is brought or not, if

after maturity of this Note or upon default hereunder counsel shall be employed to collect this Note or any installment or principal due hereunder."

The note provided that the first installment payment of the unpaid principal balance would be due on September 1, 1993. Around that time, Tate called Mitchell and said that she would come to the store and pick up the check. Mitchell responded that the check was already in the mail, but that Tate would not be happy with the amount of the payment. Consequently, Tate forwarded the check to her attorney without opening the envelope. The check was for substantially less than the $25,288.71 plus interest called for in the note, because Mitchell had deducted the losses she had incurred in selling the "old" merchandise at a discount. Tate, exercising that provision in the note which stated "[i]f default is made in the payment of any payment or any part thereof, then at the option of the holder thereof, the entire principal sum plus accrued interest shall immediately become due and payable without notice," declared the note in default and due in full. This litigation ensued.

At the closing on March 1, 1993, the parties executed a document styled "Agreement to Buy and Sell" and a document styled "Bill of Sale." The Bill of Sale states that "SELLER has agreed to sell and BUYER has agreed to buy all of the assets of BUSINESS,

7

including goodwill ... ." [emphasis provided].  The Agreement to Buy and Sell provides the following:

> SELLER shall transfer to BUYER at closing all of SELLER'S right, title, and interest in the inventory ... of BUSINESS ...
>
> *       *       *       *
>
> The inventory to be conveyed under this agreement is listed on Exhibit A, which is attached and made a part of this agreement.
>
> *       *       *       *
>
> [Exhibit A:] This list of inventory excludes all "fall" and "winter" merchandise that was invoiced to SELLER prior to January 1, 1992. "Fall" and "winter" merchandise is defined as merchandise delivered to SELLER (as reflected on the invoice) prior to December 1, 1992.

Both documents executed by the parties at closing contain a provision which states: "This agreement and the exhibits comprise the entire transaction between the parties; and there are no representations, warranties, or conditions except those stated in this agreement."  Neither the Bill of Sale nor the Agreement to Buy and Sell refers to the other document.

As is seen from the above, the documentary evidence regarding the parties' intent to buy and sell inventory covered by invoices prior to 1993 is ambiguous and contradictory.  The documents executed at closing were drafted by the buyers' attorney.  Although there is testimony that the parties negotiated the terms of the documents, Tate was apparently not represented by an attorney at

8

closing. Tate testified that Exhibit A to the Agreement to Buy and Sell is incorrect and does not reflect the parties' understanding, but that she signed the agreement nevertheless because the buyers knew and understood what inventory was included in the sale.

It is uncontroverted that the cost of inventory which had been subject to invoice prior to 1993 was included in the sale price. The buyers assert that this amounted to a material misrepresentation on Tate's part, and that they should be entitled to a price offset in the amount of the loss they incurred in selling the disputed inventory. Tate maintains that the buyers knew, at all times material, that the sale included the disputed inventory, and agreed to buy it. She argues that she would not have sold the business if the buyers were allowed to "cherry pick" only the merchandise from her store that they wanted.

The trial court, after reviewing the evidence, found the following:

> If one looks at all of these documents, exam-
> ines all of these documents in this case, as I
> think the Court must, to determine whether
> there was any misrepresentation or fraud or
> deceit, I think the Court from those documents
> and the other evidence presented by the par-
> ties, must conclude that the problem in this
> case is not misrepresentation or fraud or
> deceit; it is simply a lack of clarity of the
> parties in expressing their understanding and
> perhaps a product of haste on the part of the
> seller to consummate a sale in order to close
> out the business and be done with it, so to

> speak, and by the buyer in order to find a place to begin operation at a critical time in buyer's plans to open and operate a women's wear store.

From our review of the record, we are persuaded that the evidence does not preponderate against the trial court's ruling. As is clear from the recitation of facts above, the testimony was sharply disputed and directly contradictory. Thus, determinations of credibility played an important role in the outcome of the case. It is an elementary principle that "the trial court is in the best position to assess the credibility of witnesses; accordingly, such credibility determinations are entitled to great weight on appeal." Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn.App. 1995).

The buyers were in possession of documents at closing (the final inventory list) which clearly indicated that merchandise subject to invoice prior to 1993 was included in the transaction. Further, it strains logic somewhat to expect that Tate, who agreed to a three-year noncompetition clause in the Agreement to Buy and Sell, would have assented not to sell the majority of her store's inventory, when she would have had no reasonable way to dispose of it otherwise.

Regarding interest and attorney's fees, the terms of the note clearly state that the buyers shall be responsible for these items,

and it was not error for the court to award Tate a reasonable attorney's fee and the 7.5% interest called for by the note.

The judgment of the trial court is affirmed and the case remanded for such further action as may be necessary. Costs on appeal are assessed to the appellants.

_____
Don T. McMurray, Judge

CONCUR

_____
Houston M. Goddard, Presiding Judge

_____
Herschel P. Franks, Judge

11

IN THE COURT OF APPEALS
AT KNOXVILLE

WANDA C. TATE,                      )    KNOX CIRCUIT
                                    )    C.A. NO. 03A01-9710-CV-00459
                                    )
        Plaintiff-Appellee          )
                                    )
vs.                                 )
                                    )
                                    )
                                    )
SALLY SEIVERS and CAROLE            )
MITCHELL,                           )    HON. WHEELER A. ROSENBALM
                                    )    JUDGE
        Defendant-Appellant         )
                                    )
                                    )
                                    )
                                    )
                                    )
L'ARGENT, INC.,                     )
                                    )
    Intervening Plaintiff-          )
    Appellant                       )
                                    )
vs.                                 )
                                    )    AFFIRMED AND REMANDED
                                    )
WANDA C. TATE                       )


**<u>JUDGMENT</u>**


     This appeal came on to be heard upon the record from the
Circuit Court of Knox County, briefs and argument of counsel.  Upon
consideration thereof, this Court is of the opinion that there was
no reversible error in the trial court.

The judgment of the trial court is affirmed and the case remanded for such further action as may be necessary. Costs on appeal are assessed to the appellants.

PER CURIAM